## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS SA, and GLAXOSMITHKLINE LLC,<br><br>       Plaintiffs,<br><br>    v.<br><br>PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC.,<br><br>       Defendants. | C.A. No. 24-cv-512 (GBW)<br><br>**PUBLIC VERSION** |

## MEMORANDUM OPINION AND ORDER

Pending before the Special Master is Plaintiffs GlaxoSmithKline Biologicals SA and GlaxoSmithKline LLC's (collectively, "Plaintiffs" or "GSK") motion to compel Defendants Pfizer Inc., Pharmacia & Upjohn Co. LLC, BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. (collectively, "Defendants") to produce documents responsive to GSK's requests for production ("RFP"). D.I. 114 (the "Motion").[1] GSK seeks to compel production of: (1) documents regarding Asserted Patent Relatives responsive to RFP Nos. 19, 21–56, 58–65, 72, and 80; (2) Defendants' European Medicines Agency ("EMA") and World Health Organization ("WHO") regulatory filings for the Accused Products responsive to RFP Nos. 4–7; and (3) documents from Defendants' prior litigations and proceedings identified in RFP Nos. 21–48, including, all deposition transcripts and deposition exhibits for Defendants' witnesses,

---

[1] In accordance with Special Master Order #1, GSK submitted "a formal motion and proposed form of order setting forth the precise relief sought" via email to the Special Master and all counsel of record. D.I. 110 at 2; D.I. 114.

Defendants' written discovery responses, Defendants' sealed briefing and exhibits, and Defendants' expert reports and expert deposition transcripts and exhibits. *Id.*

On September 5, 2025, GSK submitted its opening letter brief in support of the Motion ("Op. Br."). D.I. 92. Defendants submitted their answering brief in opposition to the Motion ("Ans. Br.") on September 9, 2025. D.I. 97. The Special Master held a hearing on the Motion via videoconference on October 6, 2025.[2] D.I. 110.

Having considered the parties' letter briefing and arguments presented at the hearing, IT IS HEREBY ORDERED that the Motion (D.I. 114) is **GRANTED IN PART** for the reasons set forth below.

## I. BACKGROUND

GSK filed suit in this case on April 25, 2024, asserting claims against Defendants for infringement of U.S. Patent Nos. 11,638,693 (the "'693 patent"); 11,628,694 (the "'694 patent"); 11,666,534 (the "'534 patent"); 11,766,401 (the "'401 patent"); and 11,786,467 (the "'467 patent"). D.I. 1. GSK filed a First Amended Complaint on August 14, 2024, raising additional claims against Defendants for infringement of U.S. Patent Nos. 11,759,422 (the "'422 patent"); 11,655,475 (the "'475 patent"); and 11,851,660 (the "'660 patent") (collectively, with the initially asserted patents, the "Asserted Patents"). D.I. 26.

GSK served its First Set of Requests for Production to Defendants (Nos. 1–112) on April 9, 2025. D.I. 61; D.I. 62. Defendants served their responses and objections to GSK's First Set of Requests for Production (Nos. 1–112) on May 14, 2025. D.I. 73. The close of fact discovery is scheduled for July 29, 2026, and the deadline for substantial completion of document production

---

[2] A court reporter was present for the October 6, 2025 hearing and provided a copy of the hearing transcript ("Hrg. Tr.") to the Special Master on October 9, 2025.

is set for March 5, 2026. D.I. 56 at 3.  The claim construction hearing in this case is scheduled for April 23, 2026.  *Id.* at 10.

## II.    LEGAL STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Democratic Nat'l Committee v. Republican Nat'l Committee*, No. 18-1215, 2019 WL 117555, at *2 (3d Cir. Jan. 7, 2019) (quoting Fed. R. Civ. P. 26(b)(1)).  A party moving to compel bears the burden of demonstrating the relevance of the requested information. *Delaware Display Group LLC v. Lenovo Group Ltd.*, No. 13-2018-RGA, 2016 WL 720977, at *2 (D. Del. Feb. 23, 2016) (citing *Inventio AG v. ThyssenKrupp Elevator Am. Corp.*, 662 F. Supp. 2d 375, 381 (D. Del. 2009)).

The probative value of the information requested should be balanced against the costs and burdens imposed upon the producing party.  *Inventio*, 662 F. Supp. 2d 375 at 381; *see also Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, Civ. A. No. 05–6042, 2009 WL 435191, at *1 (D.N.J. Feb. 18, 2009) (noting that Rule 26(b)(2)(C) imposes a "rule of proportionality" that requires discovery to be restricted where the burden or expense outweighs the proposed benefit or the information can be obtained from another, less burdensome, source).

## III.    ANALYSIS

### A.    Whether Defendants Must Produce Documents Regarding Asserted Patent Relatives Responsive to GSK's RFP Nos. 19, 21–56, 58–65, 72, and 80.

GSK's RFP Nos. 19, 21–56, 58–65, 72, and 80 seek documents regarding Defendants' knowledge of and statements about any "Asserted Patent Relative," which GSK defines as "any patent or application in the same patent family as any of the Asserted Patents." Op. Br. at 1.  GSK argues that these requests are relevant to willful infringement, claim construction, infringement,

3

witness credibility, and Defendants' patent misuse and prosecution laches counterclaims. *Id.* Regarding willful infringement, GSK argues that the requests are relevant because the Asserted Patent Relatives relate to mRNA vaccines and include overlapping named inventors with the Asserted Patents. *Id.* (citing D.I. 75 at 15).

Regarding claim construction, infringement, and Defendants' patent misuse and prosecution laches defenses, GSK argues that the requests are relevant because the Asserted Patent Relatives are from the same patent families as the Asserted Patents and contain "largely overlapping disclosures using largely overlapping terminology." Op. Br. at 1; *see also* Hrg. Tr. 28:13–17 ("So they're all related to the same type of technology. They all have very similar disclosures and there's a lot of overlap among the claim terms."). GSK argues that Defendants' prior statements about the scope and meaning of terms in those related disclosures that overlap with claim terms in the Asserted Patent claims are relevant to construing those claim terms and applying them to the Accused Products in the infringement analysis. *Id.* GSK also contends that the requested documents are relevant to Defendants' credibility because Defendants' prior positions on the scope of certain claim terms contradict their position on those claim terms in this case. *Id.*

Defendants object to these requests on grounds of overbreadth, lack of relevance, and undue burden. Ans. Br. at 2; *see also* Hrg. Tr. 49:20–50:2 ("A reasonable resolution is not having the defendants go out and search for patent applications or patents that issued in far-flung jurisdictions that have nothing to do with the U.S. and in some cases differ from what's claimed in the asserted patents."). Defendants argue that these requests are overbroad because they seek "all documents and communications relating to any Asserted Patent or Asserted Patent Relative" without any limitation. Ans. Br. at 2. Defendants argue that the overbreadth issue is further

compounded because the full scope of GSK's definition of Asserted Patent Relatives encompasses a nonlimiting list of 200 worldwide patents, applications, and publications, including eleven U.S. patents that are not asserted in this case. *Id.* Defendants also argue that other patents and applications that fall within GSK's definition of Asserted Patent Relatives are not relevant because they involve other named inventors or concern vaccines that are not the bases for the alleged infringement in this case. Ans. Br. at 2; *see also id.* at 3 (arguing that the scope "goes far beyond any potential relevance" and "is not proportional to the needs of this case").

GSK's motion to compel Defendants to produce documents regarding Asserted Patent Relatives responsive to RFP Nos. 19, 21–56, 58–65, 72, and 80 is **GRANTED IN PART**, to the extent the scope of Asserted Patent Relatives is limited to patents or applications in the same family of the Asserted Patents that contain the same or similar claim terms, or involve the same or similar technologies, features, or claimed subject matter as the Asserted Patents.

The Special Master finds that GSK's definition of the Asserted Patent Relatives— encompassing "***any*** patent or application in the same patent family as any of the Asserted Patents"—is overbroad. This definition implicates at least 200 worldwide patents and applications, including some that do not necessarily share the same or similar claim terms or involve the same or similar technologies, features, or claimed subject matter as the Asserted Patents at issue in this case. The Special Master is persuaded that limiting GSK's definition to the extent above is both reasonable and appropriate to ensure that the scope of discovery regarding the Asserted Patent Relatives is proportional to the needs of this case. *Democratic Nat'l Committee*, 2019 WL 117555, at *2 (explaining "[t]he court may limit discovery to ensure its scope is proportional to the needs of a case"); *see also Apple Inc. v. Samsung Electronics Co., Ltd.*, No. C11-1846 LHK, 2012 WL 1232267, at *5 (N.D. Cal. Apr. 12, 2012) (requiring a "technological nexus [to the patents-in-suit]

. . . in order to manage the reasonable production of relevant and discoverable" documents).

As limited in this respect, the Special Master finds that the Asserted Patent Relatives are relevant to several issues in the case, including, willful infringement, claim construction, and Defendants' patent misuse and prosecution laches defenses. For example, the Asserted Patent Relatives are relevant to willful infringement because they share overlapping named inventors with the Asserted Patents, relate to mRNA vaccines, and pertain to GSK's allegations that Defendants had knowledge of and cited to "the named inventors' patent filings and research papers on mRNA vaccines." D.I. 75 at 15 (citing *10x Genomics, Inc. v. Celsee, Inc.*, No. CV 19-862-CFC-SRF, 2019 WL 5595666, at *12 (D. Del. Oct. 30, 2019)). The Asserted Patent Relatives also relate to GSK's allegations concerning Defendants' prior statements about the scope and meaning of claim terms that overlap with those in the Asserted Patents, and are therefore relevant to claim construction in this case. *See, e.g.*, *Realtime Data, LLC v. Morgan Stanley*, 875 F. Supp. 2d 276, 288 (S.D.N.Y. 2012) (noting that a party's "[p]ositions taken as to claim construction in [another case] are certainly relevant to claim construction [in the instant case]'" where the patents at issue in the cases are related).

Although Defendants argue that "the Asserted Patent Relatives concern many other patents, applications, and publications beyond the eight asserted patents in this litigation" and the scope of GSK's requests "goes far beyond any potential relevance" (Ans. Br. 2–3), they fail to adequately explain why the Asserted Patent Relatives, as limited above, would not be relevant to the issues in this case that GSK identifies. The fact that the Asserted Patent Relatives concern patents and applications beyond those asserted in this case does not, by itself, provide a sufficient basis to deny discovery. *See* Fed. R. Civ. P. 26(b)(1) (permitting "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

of the case").

Defendants also fail to adequately explain why searching for, collecting, and producing responsive documents would impose an undue burden—particularly given that, as discussed above, the scope of Asserted Patent Relatives is limited to those in the same family of the Asserted Patents that include the same or similar claim terms or involve the same or similar technologies, features, or claimed subject matter as the Asserted Patents. For example, Defendants have not indicated whether they have run any search terms or made any effort to quantify the number of documents that might be responsive to GSK's requests as limited. *See* Hrg. Tr. 19:6–13 ("The defendants have never attempted to show any overbreadth or any burden in the number of responsive documents that these search terms that we already gave them or that this list of asserted patent relatives that we already gave them might return.").

Accordingly, GSK's motion to compel Defendants to produce documents regarding Asserted Patent Relatives (D.I. 114) is **GRANTED IN PART**.

IT IS HEREBY ORDERED that within fourteen (14) days of this Memorandum Opinion and Order, Defendants shall produce documents regarding Asserted Patent Relatives responsive to GSK's RFP Nos. 19, 21–56, 58–65, 72 and 80 as limited above.

**B.    Whether Defendants Must Produce Documents Related to Their EMA and WHO Filings for the Accused Products Responsive to RFP Nos. 4–7.**

GSK's RFP Nos. 4–7 seek Defendants' EMA and WHO regulatory filings for the Accused Products and related documents.  Op. Br. at 2.  GSK argues that these documents are relevant to infringement because they include specific data and information about the Accused Products, including information regarding their structure, function, and manufacture.  *Id.* (citing Op. Br. Ex. 5 at 1; Ex. 6 at 2; Ex. 7 at 1–3, 6–7).  GSK further contends that Defendants' statements to the EMA and WHO are relevant to its infringement allegations, noting that the EMA file includes

information such as the manufacturing sites of components of the Accused Products that are shipped to Europe for combination into a final product. *Id.* (citing Ex. 8 at 11, 17; Ex. 9 at 2–3); *see also* Hrg. Tr. 40:24–41:5 ("Defendants are making components of infringing products in the United States and then shipping them abroad knowing that they're going to be combined into the infringing products abroad.").

In response, Defendants argue that GSK's motion should be denied because the requests seek documents that are duplicative of those already produced in this case. Ans. Br. 3. Defendants contend that they have already produced over three million pages of regulatory information from the BLA, EUA, and INDs related to the Accused Products as part of their core technical document production. *Id.*; *see also* Hrg. Tr. 56:2–7 ("All of the information about the chemical and physical properties of that product, the mechanism of action, how it's manufactured in the U.S. exists in the BLA"). Defendants further contend that they supplemented their responses to GSK's Interrogatory Nos. 2, 9, and 10 to identify sections in the BLA concerning the structure, function, and manufacture of the Accused Products. *Id.* (citing Ans. Br. Exs. 6, 7).

Defendants also argue that GSK previously sought production of the EMA as part of Defendants' core technical document production, and that the Court denied that request. Ans. Br. at 3 (citing Ans. Br. Ex. 5 at 4:20–25). Defendants argue that producing foreign regulatory filings is unwarranted because the case concerns only the alleged infringement of U.S. patents. *Id.*; *see also* Hrg. Tr. 55:22–56:11 ("From our perspective this is a U.S. case. It is about U.S. patents asserted in relation to a product, a drug product and drug substance that is manufactured in the United States. . . . It is not governed by or regulated by what's in the EMA or regulatory submissions to the World Health Organization.").

GSK's motion to compel Defendants to produce documents related to their EMA and WHO

filings for the Accused Products responsive to RFP Nos. 4–7 is **GRANTED IN PART**, to the extent it seeks information concerning the structure, function, or manufacture of the Accused Products that is not included in Defendants' U.S. regulatory filings or in other documents or discovery Defendants have produced in this case. The motion is **DENIED** to the extent it seeks production of Defendants' EMA and WHO filings, or related documents, that are duplicative or cumulative of information contained in Defendants' U.S. regulatory filings or other documents or discovery already produced in this case. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (instructing the court to limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative").

As limited in the above respects, the Special Master is persuaded that Defendants' EMA and WHO filings are relevant to GSK's allegations of infringement in this case because they include information about the chemical structure and physical properties of the Accused Products and the manufacture of components of the Accused Products in the U.S. *See, e.g.*, Op. Br. Ex. 8 at 10–11 (discussing what information is included in the EMA). Although Defendants contend that GSK previously sought production of the EMA in this case and that the Court denied the request (Ans. Br. at 3), the Special Master, having reviewed the cited portions of the that hearing transcript (Ans. Br. Ex. 5 at 4:20–25), is not persuaded that the Court ruled to preclude all discovery related to Defendants' EMA or other foreign regulatory filings concerning the Accused Products.

Accordingly, GSK's motion to compel Defendants to produce documents related to Defendants' EMA and WHO filings for the Accused Products (D.I. 114) is **GRANTED IN PART**.

IT IS HEREBY ORDERED that within fourteen (14) days of this Memorandum Opinion and Order, Defendants shall produce documents related to their EMA and WHO Filings for the Accused Products responsive to GSK's RFP Nos. 4–7 as limited above.

**C.    Whether Defendants Must Produce Documents From Defendants' Prior Litigations and Proceedings Identified in GSK's RFP Nos. 21–48.**

GSK's RFP Nos. 21–48 seek documents related to the Accused Products, Asserted Patents, or Asserted Patent Relatives that were filed, served, or exchanged in Defendants' other litigations, including: (1) deposition transcripts and deposition exhibits for Defendants' witnesses; (2) Defendants' written discovery responses; (3) Defendants' briefing and exhibits not available on the public docket; and (4) Defendants' expert reports and expert deposition transcripts and exhibits.  Op. Br. at 3.

GSK argues that the documents it seeks from Defendants' prior litigations are relevant to issues in this case, including, for example, infringement, damages, and witness credibility.  Op. Br. at 3 (arguing that "materials from other cases discussing the development, structure, function, manufacturing, sales, or marketing of Accused Products—such as written discovery responses, deposition transcripts, briefs, and expert reports—are relevant to at least infringement and damages in this case"); *see also id.* (arguing Defendants' witnesses' "prior testimony about the same Accused Products in this case is relevant to both substantive issues and their credibility as witnesses in this case").

In response, Defendants argue that GSK's Motion should be denied because these requests concern different asserted patents, different parties, and different witnesses, and they do not involve allegations of infringement of the Asserted Patents in this case. Ans. Br. at 1.  Defendants further argue that the requests are overbroad because they seek "nearly every document" related to at least 27 other litigations or other proceedings from 17 jurisdictions, including 11 jurisdictions outside the United States.  *Id.*  (citing Ans. Br. Ex. 1); Hrg. Tr. 51:10–14 ("Their requests now are seeking information related to . . . 27 . . . litigations, seven U.S. litigations, two IPRs, and 18 non-U.S. proceedings spanning 11 jurisdictions.").  Defendants also argue that the requests seek

third-party documents and information, the production of which would require them to navigate compliance with multiple protective orders. *Id.* at 1–2 ("The potential relevance (if it exists) does not justify this burden on Defendants or the third parties whose information is protected.") (citing *Truinject Corp v. Galderma S.A.*, No. 19-592-GBW, 2023 WL 5993170, at *3–4 (D. Del. Sept. 15, 2023)).

GSK's motion to compel Defendants to produce documents from Defendants' prior litigations and proceedings is **GRANTED IN PART**, to the extent the scope of Defendants' prior litigations and proceedings is limited to only those prior litigations and proceedings in the U.S. involving the Accused Products, Asserted Patents, or patents in the same family of the Asserted Patents that contain the same or similar claim terms, or involve the same or similar technologies, features, or claimed subject matter as the Asserted Patents.

The scope of these requests is further limited to the following documents: (1) deposition transcripts and deposition exhibits for Defendants' witnesses listed on Defendants' Rule 26 Initial Disclosures in this case; (2) Defendants' written discovery responses; (3) Defendants' briefing and exhibits not available on the public docket; and (4) Defendants' expert reports and expert deposition transcripts and exhibits. The Special Master finds that limiting the scope of these requests, as outlined above, is a reasonable measure to ensure the discovery sought is proportional to the needs of the case. *Wyeth v. Impax Labs.*, 248 F.R.D. 169, 170–71 (D. Del. 2006) (refusing to a grant discovery request for ***all*** documents pertaining to previous patent litigation as overly broad) (emphasis added).

The Special Master also finds that, as limited above, documents from Defendants' prior U.S. litigations and proceedings are relevant to issues in this case, including, infringement and the credibility of Defendants' witnesses. *Inventio*, 662 F. Supp. 2d 375 at 383 (finding a witness'

testimony in a prior case involving related patents relevant where "Defendants intend the call [that person] as a witness in this matter").  Although Defendants argue that these requests are overbroad (Ans. Br. 1–2), they fail to adequately explain why the discovery would impose an undue burden— particularly given that, as outlined above, the scope is limited to U.S. litigations and proceedings, and to the specific categories of documents identified.  *See also id.* at 2 (expressing willingness "to produce deposition and trial testimony in U.S. proceedings from the Pfizer and BioNtech witnesses listed in Defendants' Rule 26 Initial Disclosures"); Hrg. Tr. 52:11–18 ("One thing [Defendants] have said we would do is to produce deposition transcripts of the witnesses that are identified in our initial disclosures").

Accordingly, GSK's motion to compel to produce documents from Defendants' prior litigations and proceedings (D.I. 114) is **GRANTED IN PART**.

IT IS HEREBY ORDERED that within fourteen (14) days of this Memorandum Opinion and Order, Defendants shall produce documents from Defendants' prior litigations and proceedings identified in GSK's RFP Nos. 21–48 as limited above.

## IV.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Motion (D.I. 114) is **GRANTED IN PART**.

***

This Memorandum Opinion and Order is preliminarily submitted under seal as a precaution because the parties' briefing was filed under seal. Within three (3) business days of this Order, the parties shall jointly email the Special Master and advise of any proposed redactions.

IT IS SO ORDERED.

Dated: October 20, 2025

_____
Special Master Monté T. Squire