IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GLAXOSMITHKLINE BIOLOGICALS SA, and GLAXOSMITHKLINE LLC, | |
| Plaintiffs, | C.A. No. 24-cv-512 (GBW) |
| v. | PUBLIC VERSION |
| PFIZER INC., PHARMACIA & UPJOHN CO. LLC, BIONTECH SE, BIONTECH MANUFACTURING GMBH, and BIONTECH US INC., | |
| Defendants. | |

# MEMORANDUM OPINION AND ORDER

Pending before the Special Master are two motions to compel.  *First*, Plaintiffs GlaxoSmithKline Biologicals SA and GlaxoSmithKline LLC (collectively, "Plaintiffs" or "GSK") move to compel Defendants Pfizer Inc., Pharmacia & Upjohn Co. LLC, BioNTech SE, BioNTech Manufacturing GmbH, and BioNTech US Inc. (collectively, "Defendants") to supplement their initial invalidity contentions to specify no more than 12 obviousness combinations of prior art references for each asserted claim ("Plaintiffs' Motion").[1]  D.I. 120.  *Second*, Defendants move to compel Plaintiffs to narrow their asserted claims to no more than 50 claims and to propose additional search terms under the procedures set forth in the ESI Protocol ("Defendants' Motion"). D.I. 121.

On September 30, 2025, the parties emailed to the Special Master their Joint Letter

---

[1] In accordance with Special Master Order #2, each movant submitted "a formal motion and proposed form of order setting forth the precise relief sought" via email to the Special Master and all counsel of record.  D.I. 111 at 2; D.I. 120; D.I. 121.

Case 1:24-cv-00512-GBW   Document 130   Filed 11/06/25   Page 2 of 15 PageID #: 13486

Regarding Disputes to be Briefed, and the Special Master's Order #2 entered September 30, 2025 (D.I. 111) set forth the briefing schedule for these disputes. On October 3, 2025, GSK submitted its opening letter brief in support of Plaintiffs' Motion ("Pls. Op. Br."), and Defendants submitted their opening letter brief in support of Defendants' Motion ("Defs. Op. Br."). On October 8, 2025, GSK submitted its answering letter brief in opposition to Defendants' Motion ("Pls. Ans. Br."), and Defendants submitted their answering letter brief in opposition to Plaintiffs' Motion ("Defs. Ans. Br."). The Special Master held a hearing on the motions via videoconference on October 10, 2025.[2]

Having considered the parties' letter briefing and arguments presented at the hearing, IT IS HEREBY ORDERED that Plaintiffs' Motion (D.I. 120) is **DENIED** and Defendants' Motion (D.I. 121) is **GRANTED IN PART** and **DENIED IN PART** for the reasons set forth below.

I.   BACKGROUND[3]

GSK asserts claims against Defendants for infringement of eight patents. D.I. 1; D.I. 26. On August 7, 2025, Defendants served their initial invalidity contentions. D.I. 84. On October 3, 2025, GSK narrowed the number of asserted claims from 227 to 98.[4] Fact discovery closes on July 29, 2026, and the claim construction hearing is scheduled for April 23, 2026. D.I. 56 at 3, 10. The deadline for GSK to finally supplement the identification of all accused products and serve

---

[2] A court reporter was present for the October 10, 2025 hearing and provided a copy of the hearing transcript ("Hrg. Tr.") to the Special Master on October 14, 2025.

[3] The background and procedural history of this case are previously set forth in the Special Master Memorandum Opinion and Order (Public Version) docketed at D.I. 119. Rather than restating the full background and procedural history, the Special Master includes only those portions most relevant to the discovery motions addressed in this Opinion.

[4] The parties disagree as to whether GSK narrowed to 97 or 98 asserted claims on October 3, 2025. See, e.g., Hrg. Tr. 23:13–14 ("And when you mention 98 claims, yes, there are 98 claims"), 42:23–43:1 ("I heard the number 98 today, but I understand it to be 97."). For consistency, the Special Master refers to 98 asserted claims in this Memorandum Opinion and Order.

2

final infringement contentions is set for 30 days after the Court issues a claim construction order. *Id.* at 11. The deadline for Defendants to finally supplement the identification of all invalidity references and serve final invalidity contentions is 30 days after GSK's final identification of accused products and infringement contentions. *Id.*

## II.  LEGAL STANDARD

### A.  Initial Invalidity Contentions

The Delaware Default Standard for Discovery provides that the defendant "shall produce to the plaintiff its initial invalidity contentions for each asserted claim, as well as the related invalidating references (e.g., publications, manuals and patents)." D. Del. Default Standard, ¶ 4(d). Contentions made under the Delaware Default Standard, which includes invalidity contentions, are considered "initial disclosures" under Rule 26(a). *First Quality Tissue, LLC v. Irving Consumer Prods. Ltd.*, No. 19-428-RGA, 2020 WL 6286862, at *2 (D. Del. Oct. 27, 2020) (citation omitted). Contentions are intended to give a party notice of the opposing party's theories early in the case, but they are not required to prove the case. *See Wi-LAN Inc. v. Vizio, Inc.*, No. 15-788-LPS, 2018 WL 669730, at *1 (D. Del. Jan. 26, 2018) (holding that contentions should provide notice of the proponent's theories and need not prove the case).

### B.  Claim Narrowing

A district court has inherent authority to limit both the number of claim terms to be construed, and the number of patent claims the parties may assert to control the dispositions of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. *Masimo Corp. v. Philips Elecs. North Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013) (citations and quotation marks omitted); *see also id.* at 284 (considering factors such as the number of asserted claims, common genealogy of patents, and related subject matter when determining

whether to limit claims for judicial economy and case manageability). A district court may limit the number of asserted claims if it leaves open the door for the assertion of additional claims on a showing of need. *In re Katz Interactive Call Processing Litig.*, 639 F.3d 1303, 1309–12 (Fed. Cir. 2011); *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011).

### C. ESI Discovery

The Delaware Default Standard for Discovery establishes the protocol for the search methodology used in the discovery of electronically stored information (ESI). D. Del. Default Standard, at ¶ 5(b). With respect to the search methodology to be employed, the Delaware Default Standard provides that:

> If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. Absent a showing of good cause, a requesting party may request no more than 10 additional terms to be used in connection with the electronic search. Focused terms, rather than over-broad terms (e.g., product and company names), shall be employed. The producing party shall search (i) the non-custodial data sources identified in accordance with paragraph 3(b); and (ii) emails and other ESI maintained by the custodians identified in accordance with paragraph 3(a).

*Id.* The parties' compliance with their ESI discovery obligations is evaluated based on whether they have demonstrated meaningful, good-faith efforts to meet those obligations. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 673 F. App'x 141, 142 (3d Cir. 2016) (noting that parties must engage in "objectively reasonable compliance" with the discovery rules and orders of the court regarding ESI); *see also* D. Del. Default Standard for Discovery, at ¶ 1(a)–(b) (stating "[p]arties are expected to reach agreements cooperatively to conduct discovery" and "to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information").

### III. ANALYSIS

#### A. Whether Defendants Must Supplement Their Initial Invalidity Contentions.

GSK seeks to compel Defendants to supplement their initial invalidity contentions to

identify the specific obviousness combinations on which they intend to rely for each asserted claim. Pls. Op. Br. at 1. GSK argues that the contentions fail to provide meaningful notice of the obviousness theories Defendants may pursue because Defendants have asserted an unreasonably large number of obviousness combinations. *Id.* at 1 ("Defendants' contentions preserve ***many quintillion*** different possible obviousness combinations.") (emphasis in original); *see also id.* at 2 Defendants' vast array of combinations is tantamount to no disclosure at all."); *id.* at 2–3 ("Defendants' quintillions of possible obviousness combinations render its contentions incomprehensible such that GSK has no meaningful notice of the obviousness theories Defendants may pursue."); Hrg. Tr. 8:18–9:10 ("[D]efendants are asserting really an innumerable number of obviousness combinations.").

GSK contends that the contentions fail to identify which references from the numerous groups of primary references would be combined with those from the groups of other references to support their obviousness theories. Pls. Op. Br. at 1; *see also* Hrg. Tr. 20:15–19 ("And we can't take meaningful third-party discovery on any of these invalidity obviousness theories and we don't have any idea what's actually going to be asserted."). GSK contends that, because Defendants assert a right to "mix and match" references from groups disclosed for one asserted patent with those disclosed for others, Defendants' contentions "leave GSK entirely in the dark." *Id.* at 4. GSK maintains that Defendants should be required to narrow their invalidity contentions to no more than twelve obviousness combinations per asserted claim because such a limitation is reasonable at this stage of the case and is "regularly allowed in this District." *Id.* at 5.

In response, Defendants argue that GSK's motion should be denied because their initial invalidity contentions are adequate, consistent with the Scheduling Order, and are appropriate given GSK's assertion of 98 claims across eight patents. Defs. Ans. Br. at 1, 5. Defendants

contend that the Scheduling Order does not require them to identify any specific combinations or groupings at all at this early stage of the case. *Id.* at 2 ("Final invalidity contentions are due 30 days after GSK's final infringement contentions, which are not due until 30 days after the Court issues a claim construction order."); *see also* Hrg. Tr. 29:22–30:1 ("And there's nothing in the scheduling order that requires the disclosure of specific combinations at this point in time.").

Defendants further contend that the Scheduling Order instructs them to "produce their initial invalidity contentions for each asserted claim, as well as the known related allegedly invalidating references," and maintain that they have done that. Defs. Ans. Br. at 1–2 (citing D.I. 56 at 2). Defendants also contend that their initial invalidity contentions are similar in scope to those this Court has previously found sufficient, even in later phases of litigation. *Id.* at 2 (citing *RoboticsVISIONTech, Inc. v. ABB Inc.*, No. 22-1257-GBW, 2024 WL 1990970, at *2–3 (D. Del. May 6, 2024)).

GSK's motion to compel Defendants to supplement their initial invalidity contentions is **DENIED**. Defendants' contentions provide reasonable notice to GSK of their obviousness theories at this stage of the case, particularly given that GSK asserts a substantial number of claims across eight patents.

Consistent with the Scheduling Order and the District of Delaware Default Standard, Defendants have provided initial invalidity contentions for each asserted claim and identified the known related invalidating references. The fact that Defendants' contentions result in a large number of possible combinations does not, by itself, mean that they fail to provide sufficient notice, particularly at this relatively early stage of the case and given the large number of asserted claims. *See, e.g.*, *Multimedia Patent Tr. v. Apple Inc.*, No. 10-2618, 2012 WL 12868250, at *3 (S.D. Cal. Nov. 5, 2012) (stating "district courts have found similar disclosures sufficient even when the total

number of possible obviousness combinations runs into the billions"). Rather, it reflects that at this stage a substantial amount of case narrowing remains to be done, which the Special Master expects the parties will undertake as the case progresses particularly through to final contentions. *See* D.I. 56 at 11 ("[N]o later than 30 days after Plaintiffs' final identification of accused products and infringement contentions . . . [Defendants] must finally supplement the identification of all invalidity references and serve final invalidity contentions.").

The Special Master finds the Court's decision in *RoboticsVISIONTech* instructive. *See* 2024 WL 1990970, at *2–3. In *RoboticsVISIONTech*, the plaintiff moved to compel the defendant to supplement its initial invalidity contentions "to identify the prior-art references and combinations on which it intends to rely, and explain how those combinations satisfy the limitations of the asserted claims." *Id.* at *3. The plaintiff argued that the contentions were deficient because, among other reasons, they "list over a hundred alleged prior art references that do not appear in the claim charts," state that "additional references could be substituted for the references detailed in the charts without explaining why those substitutions could be made," and "reserve [the defendant's] right to identify other invalidating combinations." *Id.* The defendant responded that its initial invalidity contentions were sufficient because they "organize the prior art references into groups and articulate an overarching theory of obviousness that applies to each possible combination of prior art within those groups." *Id.*

The Court denied the plaintiff's motion to compel. *RoboticsVISIONTech*, 2024 WL 1990970, at *3. The Court found that the motion was premature in view of the deadline for final contentions. *Id.* (explaining that "[i]f [the defendant] does not adequately chart its prior-art references—such that its initial invalidity contentions fail to put [the plaintiff] on notice of [the defendant's] invalidity positions—prior to the deadline for final invalidity contentions, then [the

7

defendant] will be precluded from arguing that those prior-art references are invalidating"); *see also id.* ("[T]he Court is confident that [the plaintiff's] objection to [the defendant's] use of 'exemplary' or 'illustrative' claim charts will be resolved as the case is narrowed.").

Like the contentions in the *RoboticsVISIONTech*, for each asserted patent, Defendants' contentions identify two groups of references that they contend render each asserted claim obvious based on one or more references from the first group, in combination with one or more references from the second group and the knowledge of a person of ordinary skill in the art. *See, e.g.*, Defs. Ans. Br. Ex. 4 at 145–150 ("Claim 1 of the '693 Patent"); *see also* Hrg. Tr. 26:8–12 ("We . . . identify two groups of prior art that renders each claim obvious in view of one or more references from both groups."). Defendants' contentions also identify "Selected References" that they say they intend to rely on and specific disclosures in those references that they contend teach the relevant claim limitations. *See, e.g.*, Defs. Ans. Br. Ex. 4 at 10–87 (identifying 79 references); *see also* Hr. Tr. 26:1–7("For each of the specific references that are the subject of our obviousness combinations we summarized those specific disclosures and describe in those summaries particular disclosures that teach of the claim limitations.").

Defendants' contentions also provide disclosures regarding motivations to combine references, including citations to exemplary references and their relevant teachings. *See, e.g.*, Defs. Ans. Br. Ex. 4, at 146–150 (explaining why "[a] POSA would have been motivated to combine the above prior art references . . . with a reasonable expectation of success"); *see also* Hrg. Tr. 26:12–16 ("We describe a motivation to combine the listed references and why we contend that a person of ordinary skill would have a reasonable expectation of success in doing so."). These contentions also include claim charts that identify, element by element, how the prior art references in each group disclose every limitation of the asserted claims. *See, e.g.*, Defs. Ans. Br. Ex. 5

(providing 54-page claim chart for claims 1–27 of the '693 Patent); *see also* Hrg. Tr. 26:17–27:2 ("And importantly we have a detailed breakdown of claim charts which on an element-by-element basis identify each of the references that disclose the relevant limitations, and importantly with respect to each of the references we include either pin cites or direct quotes from those references leading the plaintiff to the relevant piece of the disclosure.").

Because Defendants' contentions identify two groups of references similar to those in *RoboticsVISIONTech*, including exemplary references they intend to rely on and contend teach the relevant claim limitations, along with the additional disclosures noted above, the Special Master is persuaded that they provide GSK with adequate notice of Defendants' obviousness theories at least at this stage of the case, given the significant number of asserted claims. These contentions will be further developed and refined as the case progresses through fact discovery, claim construction, GSK's further narrowing of the asserted claims, and final contentions. *See RoboticsVISIONTech*, 2024 WL 1990970, at *3 (expressing confidence that objections to initial invalidity contentions "will be resolved as the case is narrowed"); *see also Cerebrum Sensor Techs., Inc. v. Revvo Techs., Inc.*, C.A. No. 24-245-JLH-SRF, D.I. 93 (D. Del. Feb. 5, 2025) ("Defendant's contentions will be further developed and refined as the case proceeds through discovery, claim construction, and expert reports.") (dismissing motion to compel supplementation).

Accordingly, GSK's motion to compel Defendants to supplement their initial invalidity contentions (D.I. 120) is **DENIED**.

B.     **Whether GSK Must Narrow the Asserted Claims to No More Than 50 Claims.**

Defendants seek to compel GSK to narrow the number of asserted claims to no more than 50 claims because continuing to assert 98 claims across eight patents at this stage contravenes this

Court's guidance in this case and is inconsistent with regular practice in the District of Delaware. Defs. Op. Br. at 1; *see also* Hrg. Tr. 44:4–9 ("There's such a substantial subject matter overlap between what's asserted and what's been dropped that at least in a preliminary evaluation we don't think that they have meaningfully reduced any of the issues in the case."). Defendants maintain that, during the March 25, 2025 Case Management Conference regarding claim narrowing, the Court stated:

> That's typically how it happens, some schedule that includes some narrowing after the exchange of contentions and proposed claim constructions, but, you know, if you start with a number that's so high, like in the hundreds, then perhaps there should be some narrowing even before then.

*Id.* at 2 (citing Defs. Op. Br. Ex. 3 at 22:1–6).

Defendants argue that the Court's guidance in this regard is consistent with typical practice in this District, which often involves ordering patentees to reduce the number of claims to six or fewer claims per asserted patent before claim construction. *Id.* (collecting cases). Defendants maintain that allowing GSK to assert more than 50 claims at this stage would require them to narrow obviousness combinations for dozens more claims than GSK will be able to assert at trial, placing an unnecessary and unreasonable burden on Defendants. *Id.* at 1.

In response, GSK argues that Defendants' motion should be denied because the cases Defendants cite are inapposite. Pls. Ans. Br. at 2 ("In many of the cases P/BNT cites, the plaintiff agreed to, or itself proposed, the narrowing ultimately ordered by the Court."). GSK also argues that several of the cases are inapposite because in those cases, the Court ordered narrowing based on concerns over the number of terms for claim construction. *Id.* at 2–3; *see also* Hrg. Tr. 55:16–21 ("And right now there are currently ten disputes and that's within Judge Williams' limit of ten claim construction disputes to be briefed at the claim construction phase."). GSK further contends

10

that it lacks adequate information to cut another 48 claims out of its case because Defendants have not identified any specific obviousness combinations in their invalidity contentions they intend to pursue. *Id.* at 3; *see also id.* at 4 ("No basis exists for P/BNT's claim that GSK must **further narrow** its case while P/BNT refuses to specify or narrow its own case in any way.") (emphasis in original).

Defendants' motion to compel GSK to reduce the number of asserted claims to no more than 50 claims is **GRANTED IN PART**, to the extent specified below, with the reduction in asserted claims tied to the number of obviousness combinations per asserted claim.

As discussed above regarding GSK's motion (D.I. 120), the Special Master finds that Defendants' initial invalidity contentions provide sufficient notice to GSK of their obviousness theories at this stage of the case, particularly given the 98 claims GSK asserts. However, because Defendants' motion seeks to compel GSK to further narrow the number of asserted claims, the Special Master finds that, as a matter of fairness, further narrowing should be tied to a corresponding narrowing of Defendants' invalidity contentions. In other words, because Defendants seek to compel GSK to further reduce the number of asserted claims, the Special Master finds it appropriate and reasonable to condition that reduction on Defendants narrowing of their invalidity contentions to a specific number of obviousness combinations per asserted claim. The Special Master is also mindful of the Court's comments during March 25, 2025 Case Management Conference, suggesting some narrowing of the number of asserted claims before the claim construction hearing may be appropriate, depending on the number of asserted claims. *See* Defs. Op. Br. Ex. 3 at 22:1–6 (stating "if you start with a number that's so high, like in the hundreds, then perhaps there should be some narrowing even before then.").

Considering Defendants' motion, the Court's comments on claim narrowing at the March

25, 2025 Case Management Conference, and the substantial number of asserted claims, the Special Master is persuaded that some further narrowing is appropriate. Although GSK has already reduced the number of asserted claims from 227 to 98 across eight patents, further narrowing is warranted to begin focusing the parties' contentions as the case progresses. Accordingly, GSK is ordered to reduce the number of asserted claims to no more than 80 claims across the eight asserted patents. In turn, after GSK's reduction of the asserted claims, Defendants are ordered to identify no more than 24 obviousness combinations per asserted claim.

The Special Master is persuaded that the narrowing of the asserted claims and initial invalidity contentions, as outlined above, is appropriate and reasonable at this stage of the case. This is particularly so given that, as part of the Court's claim construction process, the parties have already identified the disputed claim terms across the asserted patents; the claim construction hearing is not scheduled until April 23, 2026; the parties' final contentions are not due until at least 30 to 60 days after the Court issues its claim construction decision[5]; and fact discovery is not set to close until July 29, 2026. *See* D.I. 56 at 3, 9, 11. The foregoing narrowing also provides a starting point for the parties to consider as they meet and confer to further narrow the asserted claims and obviousness combinations as the case progresses to final contentions.

Accordingly, Defendants' motion to compel to narrow the number of asserted claims to no more than 50 claims (D.I. 121) is **GRANTED IN PART**.

IT IS HEREBY ORDERED that within fourteen (14) days of this Memorandum Opinion and Order, GSK shall reduce the number of asserted claims to no more than 80 claims across the eight asserted patents.

---

[5] The Scheduling Order provides that "the parties should anticipate that the Court will issue its claim construction order within sixty (60) days of the conclusion of the claim construction hearing." D.I. 56 at 11.

IT IS HEREBY FURTHER ORDERED that within fourteen (14) days after GSK's reduction of the asserted claims, Defendants shall identify no more than 24 obviousness combinations per asserted claim.

### C. Whether GSK Must Propose Up to 10 Additional Search Terms Per the ESI Protocol.

Defendants seek to compel GSK to propose up to 10 additional search terms to be used to locate potentially responsive ESI pursuant to the Protocol for Discovery, Including Discovery of Electronically Stored Information ("ESI") (the "ESI Protocol," D.I. 66). Defs. Op. Br. at 3. In relevant part, the ESI Protocol provides that:

> If the producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party. ***Absent a showing of good cause, a requesting party may request no more than 10 additional terms*** to be used in connection with the electronic search.

*Id.* (citing D.I. 66) (emphasis added).

Defendants contend that after disclosing their elected search terms to locate potentially responsive ESI, GSK, instead of requesting no more than 10 additional terms as permitted under the ESI Protocol, demanded that Defendants "make reasonable adjustments to [their] own search terms in the first instance." Defs. Op. Br. at 3. Defendants maintain that, under the ESI Protocol, the proper procedure is for GSK to propose up to 10 additional terms for Defendants' consideration. *Id.* Defendants argue that, because GSK has neither proposed any additional terms nor shown good cause to propose more than 10, it should be compelled to do so forthwith in compliance with the ESI Protocol. *Id.*; *see also* Hrg. Tr. 61:9–17 ("[I]f you're concerned that things are missing the protocols specify that you should identify additional terms . . . If GSK's position is that our terms are somehow inadequate the ESI protocol requires them to provide us with additional terms.").

13

In response, GSK contends that Defendants' motion should be denied because the ESI Protocol does not impose any time limits for it to propose additional search terms. Pls. Ans. Br. at 4 (citing D.I. 66 ¶ 5(b)). GSK maintains that it intends to provide additional ESI search terms to Defendants well in advance of the fact discovery and substantial completion of document production deadlines, so as to allow Defendants a reasonable opportunity to collect, review and produce responsive documents.[6] *Id.* (citing D.I. 55 ¶ 4(a), (b)); *see also* Hrg. Tr. 67:9–11 ("We have no intent of waiting until the eleventh hour to disclose our additional terms."). But argues that it lacks sufficient context to propose additional search terms because Defendants have not yet produced any internal-facing documents that would provide the information necessary for GSK to craft appropriate additional search terms. Pls. Ans. Br. at 4–5; *see also* Hrg. Tr. 68:17–24 ("What they have not produced is internal-facing documents. So these are internal development documents . . . internal competitive intelligence or patent intelligence documents and documents relating to . . . projects that the defendants may be developing.").

Defendants' motion to compel GSK to propose up to 10 additional search terms pursuant to the ESI Protocol is **DENIED**. The Special Master does not find Defendants' motion in this regard persuasive because, as GSK correctly notes (Pls. Ans. Br. at 4), the ESI Protocol does not set a specific time or deadline for a requesting party to propose additional search terms, nor does it require that such terms be submitted immediately or at the producing party's demand.

The Special Master also does not find it unreasonable for GSK to wait to propose additional search terms until it receives documents from Defendants that it deems necessary to formulate them, particularly given that the deadline for substantial completion of document production is not

---

[6] The Scheduling Order in this case provides that fact discovery shall be completed on or before July 29, 2026, with substantial completion document production by March 5, 2026. D.I. 56 ¶ 4(a), (b).

14

until March 25, 2026 (D.I. 56 at 3), and GSK's counsel's represents that it intends to provide additional ESI search terms to Defendants well in advance of the fact discovery and document production deadlines.

Accordingly, Defendants' motion to compel GSK to propose up to 10 additional search terms pursuant to the ESI Protocol (D.I. 121) is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Plaintiffs' Motion (D.I. 120) is **DENIED** and Defendants' Motion (D.I. 121) is **GRANTED IN PART** and **DENIED IN PART**.

\* \* \*

This Memorandum Opinion and Order is preliminarily submitted under seal as a precaution because the parties' briefing was filed under seal. Within three (3) business days of this Order, the parties shall jointly email the Special Master and advise of any proposed redactions.

IT IS SO ORDERED.

Dated: October 31, 2025

*Monte T. Squire*
_____
Special Master Monté T. Squire